## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| In re | Case No. 05-50011<br>Chapter 11 |
| AZABU BUILDINGS COMPANY,<br>LTD., aka AZABU TATEMONO K.K., | |
| Debtor and<br>Debtor-in-Possession. | Adv. Pro. No. 07-90043 |
| _____ | |
| AZABU LIQUIDATING TRUST | |
| vs. | |
| BEECHER, LTD., | |
| Defendant. | Re: Docket No. 87 |

## MEMORANDUM OF DECISION ON
## MOTION FOR PARTIAL SUMMARY JUDGMENT

## I.     INTRODUCTION

At issue is whether a Japanese judgment domesticated in Hawaii accrues interest at the Japanese rate or the Hawaii rate, and whether, under Hawaii law, junior lien creditors can prevent each other from compelling a senior secured party to marshal its collateral to the detriment of the other junior party.

## II.    STATEMENT OF FACTS

Azabu Buildings Company, Ltd. (the "Debtor"), is a Japan-based real estate investment corporation that owned several Hawaii hotels at the height of the Japanese investment boom in the late 1980s.  When the bubble burst in the early 1990s, the value of the Debtor's properties in Hawaii and Japan plummeted, the Debtor became unable to service hundreds of millions of dollars in debt, and the Debtor lost all of its properties except for the leasehold interest in the Hyatt Regency Waikiki Resort & Spa (the "Hotel").

### A.    The Japan Judgment

On July 21, 1993, the corporate predecessor of the Chuo Mitsui Trust and Banking Company, Ltd. ("CMTB"), obtained a preliminary judgment of 4,081,033,192 yen[1] against the Debtor in the Tokyo District Court.  The judgment and later-issued writs of enforcement provided that interest would accrue on the judgment at six percent per annum from May 11, 1993.  Beecher, Ltd. ("Beecher"), a Gibraltar corporation, acquired the judgment on November 9, 2000.

On January 3, 2002, Beecher registered the Japan judgment in Hawaii pursuant to Haw. Rev. Stat. ch. 658C, the Uniform Foreign Money-Judgments

---

[1] Approximately $37,675,712 at the exchange rate in effect on that date.

U.S. Bankruptcy Court - Hawaii   #07-90043   Dkt # 130   Filed  03/11/08   Page 2 of 22

Recognition Act. Beecher promptly recorded the judgment in the appropriate state offices and thereby obtained a lien on the Debtor's leasehold interest in the Hotel. Haw. Rev. Stat. §§ 636-3 and 501-102.

When Beecher recorded the judgment in Hawaii, Waikiki First Finance Corp. and Waikiki S.F. Corp. (the "Waikiki Entities") held first and second mortgages on the Hotel, respectively.

In 2004, Beecher commenced an action in the First Circuit Court of the State of Hawaii to foreclose its judgment lien and obtain other relief. Beecher recorded a notice of pendency of action on August 4, 2004.

During 2005, the state court made interlocutory rulings that the statute of limitations had run on Beecher's judgment and that Beecher's judgment and lien were not presently viable or enforceable.

### B. <u>The Bankruptcy Case</u>

On November 10, 2005, before the state court entered a final judgment, Beecher and four other creditors filed an involuntary chapter 11 petition against the Debtor. An order for relief was entered on February 1, 2006, with the Debtor's consent.

On February 7, 2006, Beecher removed the foreclosure proceeding to this court. The court remanded the proceeding to the state court on May 15, 2006,

3

because the trial level proceedings in the state court were all but complete and it was more appropriate for the state courts, rather than the federal courts, to hear the appeal from the state court's judgment. The remand order provides, however, that, "Nothing in this Order shall be deemed to dictate the treatment of Beecher's disputed secured claim in this bankruptcy case while any appeals are pending." Docket No. 190, Case No. 06-90023.) This court's subsequent order lifting the automatic stay to allow the state court action to proceed contains a similar proviso. (Docket No. 374, Case No. 05-50011.)

The state court entered final judgment in the foreclosure proceedings on June 23, 2006. Beecher's appeal is pending before Hawaii's appellate courts.

On May 30, 2006, Beecher filed a proof of claim in the chapter 11 case asserting a secured claim in the amount of $73,035,470.81. The claim includes interest on the Japan judgment at six percent per annum from the date of the preliminary judgment of the Tokyo District Court on July 21, 1993, through the registration of the judgment in Hawaii on January 3, 2002, and interest at the Hawaii statutory rate of 10 percent per annum from January 3, 2002, through the chapter 11 petition date.[2] Beecher asserts that its judgment claim is secured by the

_____

[2] Beecher also asserted other unsecured claims which this decision does not address.

4

Hotel and by about $18,300,000 in various depository accounts in Tokyo which Beecher garnished in 2002.

The Waikiki Entities filed proofs of claim asserting secured claims totaling $330 million.  The Waikiki Entities contend that their claims are secured by the Hotel, personal property of the Debtor including non-realty furniture, fixtures and equipment at the Hotel, the Hotel revenue stream, and the Debtor's funds held in depository accounts in Tokyo.

In all, more than $10 billion in claims have been filed in the chapter 11 case, including more than $9 billion in unsecured claims.

### C.     Settlement with the Waikiki Entities

The Debtor and the Official Committee of Unsecured Creditors (the "Committee") challenged the claims of the Waikiki Entities and their former parent corporation on various grounds.  On June 14, 2007, the court approved a global settlement among the Debtor, the Committee, the Waikiki Entities, and the former parent corporation.  The settlement provides (among other things)  that the Waikiki Entities' claims would be allowed as secured for the total amount of $330 million, and that the Waikiki Entities would seek to satisfy their claims from the Hotel before resorting to other collateral "unless applicable law or Court order otherwise requires[.]"  The order approving the settlement states that:

5

The approval of the Settlements and the entry of this Order shall not and does not constitute a determination of any marshalling rights that Beecher or the estate of the Debtor may have with regard to the collateral of the Waikiki Entities because the obligation of the Waikiki Entities to obtain payment first from the collateral in which Beecher asserts a junior lien will not apply if applicable law or Bankruptcy Court order otherwise requires.

Docket No. 1379 in Case No. 05-50011, p. 4, ¶ 4.

On June 14, 2007, the court confirmed the joint reorganization plan ("Joint Plan") proposed by the Debtor and the Committee, pursuant to which the equity of the reorganized Debtor is to be sold to Hyatt Corp. for $445 million upon the satisfaction of certain conditions. The Japanese deposit accounts and other non-Hotel collateral are excluded from the equity sale. The Joint Plan transfers all causes of action of the Debtor's estate to the Azabu Liquidating Trust (the "Trust").

## III.   PROCEDURAL HISTORY

On June 29, 2007, the Debtor and the Committee commenced this adversary proceeding by filing four objections to the secured and unsecured claims asserted by Beecher and five counterclaims against Beecher ("Objections/Counterclaims"). On August 23, 2007, the court approved the Debtor and Committee's motion to substitute the Trust as the sole plaintiff in this adversary proceeding.

The Objections/Counterclaims seek, among other things, to disallow

6

Beecher's judgment claim as a secured claim or to avoid the judgment lien.  In Objection No. 4, the Trust alleges that, assuming Beecher's judgment is enforceable, interest on the judgment is limited to the Japanese rate of six percent per annum.

On July 27, 2007, Beecher moved to dismiss Counts 1, 3, 4 and 5 of the Counterclaim and to overrule Objections 1, 3 and 4.  The court dismissed Counterclaim Count 1 with prejudice and dismissed Counterclaim Count 4 with leave to amend.  The Trust filed amended Objections/Counterclaims on November 9, 2007.  The court denied the motion to dismiss as to all other objections and counterclaims.[3]

The Trust moves for summary judgment on whether Beecher is entitled to prepetition interest on its domesticated judgment at the ten percent Hawaii statutory rate and whether Beecher is entitled, under the marshaling doctrine, to compel the Waikiki Entities to first seek satisfaction of their claims from collateral

---

[3] On December 31, 2007, the U.S. District Court granted the Trust's motion for leave to appeal the interlocutory order dismissing Count 1 of the Counterclaim.  The appeal does not divest this court of jurisdiction over the instant motion, which does not seek "a final adjudication of the substantial rights directly involved in the appeal."  Neary v. Padilla (In re Padilla), 222 F.3d 1184, 1190 (9th Cir. 2000).  The appeal concerns whether the Trust can avoid Beecher's judgment lien.  For purposes of this motion, the court assumes, without deciding, that Beecher has a valid judgment lien.

7

other than the Hotel.[4]

## IV.    STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c), Fed. R. Bankr. P. 7056.  Summary judgment should be granted against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Huey v. Honeywell, Inc., 82 F.3d 327, 334 (9th Cir. 1996)(quoting Celotex v. Catrett, 477 U.S. 317, 322 (1986)).

## V.    DISCUSSION

### A.    **Prepetition Interest on the Judgment**

#### 1.    Summary of contentions

The Trust seeks summary judgment disallowing a portion of the prepetition interest claimed by Beecher on its domesticated judgment.  Beecher claimed interest at six percent, as provided in the Tokyo District Court judgment, from the date of the judgment to the date of its domestication in Hawaii, and from that date

---

[4] The court heard the motion on January 25, 2008.  Wayne Mau, Esq., Chuck C. Choi, Esq., Jeffrey C. Krause, Esq., and H. Alexander Fisch, Esq., appeared for the Trust; Sidney P. Levinson, Esq., and Caroline Walters, Esq., appeared for Beecher; Oscar Garza, Esq., appeared for the Waikiki Entities; Josiah M. Daniel III and Andrew Stewart, Esq., appeared for F4P1 Investments, LLC; and Michael A. Yoshida, Esq., appeared for the Resolution and Collection Corporation.

8

to the petition date at ten percent per year pursuant to Hawaii law.[5]

The Trust argues that, under modern choice of law principles, the court should apply the interest rate of the jurisdiction that has the most significant relationship to the parties and the subject matter – in this case, Japan.

Beecher states, under Hawaii case law, Beecher is entitled to the Hawaii statutory rate of interest from the time it registered the judgment in Hawaii, if not also from the time the judgment was rendered in Japan.

2.    DeHerblay v. Norris

In DeHerblay v. Norris, 8 Haw. 335 (1892), the plaintiff brought an action in Hawaii on a judgment obtained in New York and sought to recover six percent interest on the judgment based on New York law. When the trial closed, the defendant pointed out that the plaintiff had failed to put on any evidence about interest on the judgment under New York law. The trial court reopened the case to allow the plaintiff to present her evidence.

The Supreme Court held that the trial court did not abuse its discretion in admitting the evidence, but it also noted that "this point loses its significance when we consider what the true rule for the rate of interest in such a case is." 8 Haw. at

---

[5] The dollar amount of the interest differential is disputed. This decision fixes the annual rate at which interest accrues; the calculation of the correct dollar amount of accumulated interest must be decided separately.

U.S. Bankruptcy Court - Hawaii   #07-90043   Dkt # 130   Filed  03/11/08   Page 9 of 22

337. The court observed that, "In suits upon judgments, interest . . . follows the rule in force in the jurisdiction where the action was brought." Id. The court ruled that the Hawaii statute providing for nine percent (now ten percent) interest on contract claims applied to a foreign judgment. (The court did not address the applicability of the judgment interest statute.)

The Trust argues that the relevant discussion in DeHerblay is dicta. This is not entirely correct. It is correct that the plaintiff never sought interest at the Hawaii rate, but only at the lower New York rate. The court still needed to address the point, however, to show that the trial court's decision to reopen the evidence did not prejudice the defendant. If the trial court had left the record closed, the plaintiff would have been entitled to interest at the Hawaii rate, so reopening the record to allow proof of the lower New York rate did not prejudice the defendant. In any event, under Hawaii law, well-considered dicta are just as binding as holdings. Jenkins v. Cades Schutte Fleming & Wright, 76 Haw. 115, 118, 869 P.2d 1334, 1337 (1994); Robinson v. Ariyoshi, 65 Haw. 641, 655, 658 P.2d 287, 298 (1982).

If DeHerblay is still good law, interest accrues on the domesticated judgment

U.S. Bankruptcy Court - Hawaii  #07-90043  Dkt # 130  Filed 03/11/08  Page 10 of 22

at the Hawaii rate of ten percent from the date of domestication.[6]  Haw. Rev. Stat. §§ 478-2, -3.

       3.    <u>UFMJRA</u>

Since <u>DeHerblay</u> was decided, the Uniform Foreign-Money Judgment Recognition Act ("UFMJRA") has drastically changed the recognition of foreign judgments in Hawaii.  Both Beecher and the Trust acknowledge that the UFMJRA does not explicitly address the interest question.  Both argue, however, that snippets of the UFMJRA support their respective positions.  I am persuaded that the drafters of UFMJRA did not intend to change or codify the law concerning the rate of interest on a domesticated judgment.  Therefore, I conclude that the UFMJRA did not overrule <u>DeHerblay</u>.

       4.    <u>Application of choice of law principles</u>

The Trust argues that the Hawaii courts would abandon <u>DeHerblay</u> and instead would follow the more modern approach of considering which jurisdiction has the "most significant relationship" or "most significant contacts" with the parties and the subject matter of the judgment.

The Hawaii Supreme Court "has 'moved away from the traditional and rigid

---

[6]Beecher's proof of claim seeks interest at the Japan rate for the period prior to domestication of the judgment.  In its response to the Trust's motion, Beecher states that it may amend its claim to seek interest at the Hawaii rate for that period.  I will not address this issue unless and until Beecher attempts to amend its claim.

11

conflict-of-laws rules in favor of the modern trend towards a more flexible approach looking to the state with the most significant relationship to the parties and subject matter.'" <u>Mikelson v. United Servs. Auto. Ass'n</u>, 107 Haw. 192, 198, 111 P.3d 601, 607 (2005)(quoting <u>Lewis v. Lewis</u>, 69 Haw. 497, 499, 748 P.2d 1362, 1365 (1988)). "This flexible approach places '[p]rimary emphasis . . . on deciding which state would have the strongest interest in seeing its laws applied to the particular case.'" <u>Id.</u> Hawaii courts have applied this test to determine the governing law in insurance coverage cases such as <u>Mikelson</u> and <u>Del Monte Fresh Produce (Hawaii), Inc. v. Fireman's Fund Ins. Co.</u>, 2007 WL 4533151, at *5 (Dec. 26, 2007), in other contract cases such as <u>Lewis</u> (involving a premarital agreement), and in tort cases, <u>Roxas v. Marcos</u>, 89 Haw. 91, 117, 969 P.2d 1209, 1235 (1998).

I conclude that the Hawaii courts would also apply this approach to decide the rate at which interest accrues on a domesticated foreign judgment and would no longer follow <u>DeHerblay</u>'s antiquated reasoning. There is no reason to think that the Hawaii courts would apply one rule to decide the judgment interest rate and an entirely different set of principles to decide all other choice of law issues.

Under the "most significant relationship" approach, the Japan judgment rate applies. The underlying promissory note was executed and delivered in Japan, the

U.S. Bankruptcy Court - Hawaii   #07-90043   Dkt # 130   Filed  03/11/08   Page 12 of 22

original parties to the 1992 note and the 1993 judgment are Japanese corporations, and performance of both parties' obligations was to be made in Japan. Japan's interest in seeing its judgment rate of interest apply, following extensive proceedings in its courts to enforce a contract between two Japanese corporations, also outweighs Hawaii's interest in seeing its statutory interest rate apply. The fact that the registered judgment encumbers valuable Hawaii real estate does not outweigh the host of factors suggesting Japan has the most significant relationship to the parties, the transaction, and the judgment.

Applying the interest rate of the rendering forum also avoids serious practical problems. Under DeHerblay, a judgment rendered in one jurisdiction and recognized in one or more other jurisdictions could bear interest at different rates in different places. This would make it difficult to determine when the judgment is satisfied and could result in a double recovery. Applying the rendering jurisdiction's rate reduces confusion and the potential for litigation over whether a registered judgment has been satisfied.

### B. Marshaling

The Trust seeks summary judgment dismissing with prejudice Beecher's affirmative defense that it is entitled to compel the Waikiki Entities to satisfy their secured claims first from assets of the Debtor other than the Hotel. Tens of

U.S. Bankruptcy Court - Hawaii   #07-90043   Dkt # 130   Filed  03/11/08   Page 13 of 22

millions of dollars are at stake. If the Waikiki Entities recover from the Hotel first, the Waikiki Entities would be paid in full, Beecher would be paid only to the extent of any surplus Hotel proceeds, and all of the non-Hotel collateral (including tens of millions of dollars in the Japanese deposit accounts) would go to the Trust for the benefit of unsecured creditors. On the other hand, if the Waikiki Entities recover out of the non-Hotel collateral first, the Waikiki Entitles would absorb all of the proceeds of the non-Hotel collateral and most of the Hotel proceeds, Beecher would be paid (perhaps in full) out of the remaining Hotel proceeds, and the estate would have to be content with any leftover Hotel proceeds.

      1.    <u>Marshaling in general</u>

The doctrine of marshaling is an equitable doctrine which "'rests upon the principle that a creditor having two funds to satisfy his debt may not, by his application of them to his demand, defeat another creditor, who may resort to only one of the funds.'" <u>Meyer v. U.S.</u>, 375 U.S. 233, 236 (1963)(quoting <u>Sowell v. Federal Reserve Bank</u>, 268 U.S. 449, 456-57 (1925)). The purpose of the doctrine "is to prevent the arbitrary action of a senior lienor from destroying the rights of a junior lienor or a creditor having less security." 375 U.S. at 237.

Marshaling may be invoked only: (1) on behalf of junior secured or lien creditors; (2) where the debtor has two distinct funds; and (3) its operation would work no inequity upon the debtor or certain third parties. <u>In re Brazier Forest</u>

14

<u>Products, Inc.</u>, 921 F.2d 221, 223 (9th Cir. 1990).  In bankruptcy cases, "[t]he specifics of the marshaling doctrine" are governed by state law.  <u>Id.</u>

      2.    <u>Marshaling in bankruptcy</u>

Special concerns arise when marshaling is sought in a bankruptcy case.  If a junior secured creditor can require the senior secured creditor to marshal its security, the junior secured creditor's recovery increases at the expense of unsecured creditors.  Based on the principal of equal treatment of all similarly situated creditors, bankruptcy courts are reluctant to permit secured creditors to enhance their position to the detriment of unsecured creditors.  Further, pursuant to 11 U.S.C. § 544(a)(1), the trustee or debtor-in-possession can assert, for the benefit of the estate, a hypothetical judicial lien on all of the debtor's property as of the petition date.  This status may give the estate its own marshaling claims.

In a pair of decisions, the Ninth Circuit laid down two propositions about marshaling in bankruptcy.  <u>Owens-Corning Fiberglas Corp. v. Center Wholesale, Inc. (In re Center Wholesale, Inc.)</u>, 759 F.2d 1440 (9th Cir. 1985); <u>Owens-Corning Fiberglas Corp. v. Center Wholesale, Inc. (In re Center Wholesale, Inc.)</u>, 788 F.2d 541 (9th Cir. 1986).  First, under federal bankruptcy law, the trustee or debtor in possession, as a hypothetical lien creditor under section 544(a), can assert whatever marshaling rights are available to such a creditor under applicable state law.  Second, under California law, if two junior secured creditors both have the right to

15

compel a senior creditor to marshal its security, then either of the junior creditors can block the other's marshaling claims.[7]

>    3.    Marshaling under Hawaii law

The Trust points out that no Hawaii decision has expressly adopted the doctrine of marshaling.  Only two published Hawaii cases discuss marshaling, Merchants Collection Agency, Ltd. v. Mitchell, 32 Haw. 343 (1932), and In re United Retail Corp., 33 B.R. 150 (Bankr. D. Haw. 1983)(Chinen, J.).  In both of these cases, the courts acknowledged the doctrine but did not apply it.

I conclude that marshaling is available under Hawaii law.  Merchants Collection and United Retail uncritically recognize the doctrine.  In addition, the "common law of England, as ascertained by English and American decisions" is "the common law of the State of Hawaii in all cases" except where otherwise prohibited by U.S. and Hawaii law or Hawaiian judicial precedent or usage.  Haw. Rev. Stat. § 1-1.  Section 1-1 "makes the principles of the common law just as binding on this court as if they were  embodied in legislative enactments."  Ah Leong v. Ah Leong, 29 Haw. 770, 779 (Haw. 1927).  Equity is included within the

---

[7]Courts and commentators have criticized these decisions.   Western Farm Credit Bank v. Teresi (In re Teresi), 134 B.R. 392, 397 n. 1 (Bankr. E.D. Cal. 1991)(questioning the continuing viability of the "broad holding in Center Wholesale I that California law 'implies' that a judgment creditor is entitled to block a marshaling order prejudicing its interest");  Moses Lachman, Comment, Marshaling Assets in Bankruptcy: Recent Innovations in the Doctrine, 6 Cardozo L. Rev. 671, 688 (1985)).  Although the criticisms are cogent, the Center Wholesale cases remain binding.

U.S. Bankruptcy Court - Hawaii   #07-90043   Dkt # 130   Filed  03/11/08   Page 16 of 22

common law within the meaning of section 1-1.  <u>Welsh v. Campbell</u>, 41 Haw. 106,

118 (Haw.Terr. 1955).  Because marshaling is firmly rooted in the common law, it

is part of the law of Hawaii.

### 4.    <u>The Trust's failure to assert affirmative marshaling rights</u>

Beecher argues that the Trust cannot assert marshaling rights, or block

Beecher's marshaling rights, because the Trust did not formally claim marshaling

in the Objections/Counterclaims.  I do not accept this contention.  "So free and

large is the equitable doctrine [of marshaling] that assets will in many cases be

marshaled, provided the facts which move the court appear at any time during the

progress of the trial, even though they have not been alleged in the pleadings."

<u>United Retail</u>, 33 B.R. at 152-53 (quoting <u>Sherron v. Acton</u>, 18 A. 978, 978 (N.J.

Ch. 1890)).

### 5.    <u>Marshaling by multiple junior secured parties</u>

Beecher and the Trust do not seriously challenge the availability of

marshaling to both parties.  They disagree, however, about what should happen

where two junior secured creditors assert conflicting marshaling claims.

Marshaling in its classic form involves two secured creditors, one senior and

one junior.  Where there are three secured creditors, one senior and two junior,

both junior creditors are entitled to marshaling, and the junior creditors'

marshaling claims conflict, there are at least four different ways to decide what to

17

do.

                a.    *Blocking*

The first approach is that taken in the <u>Center Wholesale</u> cases, where each junior party can block the other from compelling the senior party to marshal its collateral to the other junior party's detriment. In other words, if two junior creditors have marshaling rights, each can veto the other. In that event, the senior lienor regains the right to collect from its collateral in any order it chooses, regardless of any damage to either junior creditor.

<u>Center Wholesale</u> decided that this is the correct approach under California law. This case is controlled by Hawaii law, so this aspect of the <u>Center Wholesale</u> decisions is not binding. As stated above, no court has ever considered the details of the marshaling doctrine in Hawaii, let alone this specific question.

I conclude that Hawaii courts would not adopt the "blocking" approach. The approach is inconsistent with the fundamental purpose of the marshaling doctrine, which is to prevent a senior creditor from unilaterally and unnecessarily harming a junior secured creditor. When there is only one junior creditor, everyone agrees that, under the marshaling doctrine, a court of equity can intervene to protect the junior creditor against the senior creditor's caprice. Under the blocking approach, however, if two junior creditors are each entitled to marshaling, the court of equity must simply throw up its hands and walk away, leaving both junior creditors at the

18

senior creditor's mercy, rather than seek a fair accommodation of all parties' interests. Equity need not and should not give up so easily.

The blocking approach also tends, in the real world, to bring about a result which the Ninth Circuit said it did not intend. In the second <u>Center Wholesale</u> decision, the court emphasized that it did not intend to permit the trustee to force the senior secured creditor to recover first from the junior secured creditor's collateral. The court quoted a law review article which referred to this as "reverse marshaling." 788 F.2d at 544. The problem with the blocking approach is that it gives the trustee and the junior secured creditor an incentive to induce the senior secured creditor to recover from the collateral in the manner beneficial to each of them and detrimental to the other. Therefore, the allocation of the collateral will probably be decided, not based on the principles of fairness embedded in equity jurisprudence, but instead based on who can make the best offer or the worst threat to the senior secured creditor.

In fact, something like that happened in this case. The estate disputed the Waikiki Entities' claims. As part of a settlement, the Waikiki Entities agreed to recover from the collateral in a way that was best for the estate and worst for Beecher. Thus, if the senior secured creditor controlled the disposition of the collateral, the allocation of the collateral would turn on which junior creditor had more leverage over the senior secured creditor.

19

This is the kind of result that the marshaling doctrine was intended to avoid, that a court of equity should not countenance, and that the Ninth Circuit said it did not mean to endorse.

           b.    *First in time, first in right*

The second approach is to allow the junior secured party with the first perfected lien to compel marshaling over the objections of subsequent junior creditors. Maurice T. Brunner, <u>Doctrine of Marshaling Assets Where the Two Funds Covered by the Paramount Lien are Subject Respectively to Subordinate Liens in Favor of Different Creditors</u>, 76 A.L.R.3d 326, § 2 (1977). The rule "is founded upon the general principle that as between equal equities the prior in time prevails[.]" <u>Id.</u>

At first glance, this approach has the appeal of rewarding the diligent and protecting the expectations of the junior party who is first in time. The approach suffers from the logical defect that, where two parties each have subordinate liens on two different funds, neither junior party is second in time to the other with respect to its fund. Allowing the prior junior party to compel marshaling to the detriment of the subsequent junior party allows the prior party to recover from funds against which it holds no lien. <u>William Metcalfe & Sons, Inc. v. Canyon Defined Benefit Trust</u>, 318 Md. 565, 568, 569 A.2d 669, 670 (Md.App. 1990). It may be fair to reward the diligence of a creditor by giving it first rights in the funds

U.S. Bankruptcy Court - Hawaii   #07-90043   Dkt # 130   Filed  03/11/08   Page 20 of 22

which it has diligently pursued, but it is excessive to give that creditor first rights in funds which another creditor secured first.

### c. *Equitable allocation*

A third approach would require the court to allocate the surplus after payment of the senior secured creditor based on all of the equities of the case. "If either group has a superior equity, it must be respected." Sanborn, McDuffee Co. v. Keefe, 187 A. 97, 98 (N.H. 1936). This approach is undesirable because it leaves the court with no standards on which to base its decision and the parties with no rules on which to base their behavior, decisions, and expectations.

### d. *Proportional allocation*

The fourth approach is to apportion among the junior secured parties the surplus remaining after satisfaction of the senior lien. William Metcalfe, 318 Md. at 574, 569 A.2d at 672 (citing Omaha Nat. Bank v. Continental Western Corp. (203 Neb. 264, 269, 278 N.W.2d 339, 343 (1979)). Under this approach, each junior lienor is "bound to bear in due proportion to the value of the premises mortgaged to him, the burthen of the first mortgage." Mutual Life Ins. Co. of N.Y. v. Boughrum, 24 N.J. Eq. 44 (N.J. Ch. 1873).

I predict that Hawaii courts would allocate the surplus remaining after satisfaction of the senior lien among the junior secured creditors according to the respective values of the funds to which their junior liens attach. This approach is

21

most consistent with Hawaii courts' view that "equality is equity."  See <u>Mitsuo</u>

<u>Tagawa v. Karimoto</u>, 43 Haw. 1, 11 (1953)("Arbitrary and prejudicial treatment of

one group of creditors in any receivership without any reason or logic violates the

fundamental and basic rule in receivership that 'equality is equity.'").  The

proportionality approach protects both junior liens from the senior creditor's

unbridled discretion and from each other, and provides for a neutral, fair, easily

administered rule.

## VI.    CONCLUSION

The Trust has established as a matter of law that Beecher may recover

interest on its domesticated judgment at the six percent rate ordered by the

Japanese court.  Both the Trust and Beecher are entitled to invoke (and have

invoked) marshaling, and the surplus proceeds remaining after satisfaction of the

Waikiki Entities' senior liens shall be allocated between the Trust and Beecher in

proportion to the values of the funds to which their respective liens attach.

*/s/ Robert J. Faris*
**United States Bankruptcy Judge**
Dated: **03/11/2008**

22